J-A12002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN TENNIE, | : | |
| | : | |
| Appellant | : | No. 3376 EDA 2017 |

Appeal from the Judgment of Sentence September 13, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0001033-2017

BEFORE:  BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 06, 2018**

Shawn Tennie appeals from the judgment of sentence of two to four years incarceration imposed following his conviction of drug-related offenses. We affirm.

The trial court set forth the following summary of the facts underlying this appeal.

> On November 20, 2016[,] at about 4:40 p.m.[,] Officer Ishmael Johnston of the Darby Township Police Department was on duty in full uniform and operating a marked police unit.  Officer Johnston and Officer Lomax,[1] also of the Da[r]by Township Police Department, responded in separate marked vehicles to a report of two subjects causing a disturbance in the Princess Market on Cook Road in Sharon Hill, PA.  Officer Lomax was also in full uniform.  The officers arrived at the store within two to four minutes of the call.  The owner of the market reported a disturbance and called [for] police assistance.  Officer Johnston testified that he was familiar with the Princess Market[,] and had

_____

[1] Officer Lomax's first name does not appear in the record.

been called to the [m]arket for drug violations, fights and "domestic" problems. I[n] his call to police, the owner described two males: a twenty-five[-]year[-]old black male wearing a black jacket and a black male wearing black pants and a gray hoodie.

The officers arrived at the scene. Officer Lomax drove toward the front of the store. Officer Johnston drove towards an alley. The officers exited their marked vehicles and Officer Lomax walked toward the front door. Officer Johnston walked through an alley from behind the store. The officers saw two men directly in front of the [m]arket leaving the store. Their descriptions of the men matched the description that was reported by the owner. Officer Johnston was approaching them from behind and the men did not appear to see him at first. Before either officer spoke to the men[,] [Appellant] took off running when he noticed Officer Johnston. [Appellant] was about six to eight feet from Officer Johnston when he took off.

Officer Johnston pursued [Appellant] until [Appellant] tripped and fell and a bag containing narcotics fell from his pocket. He was handcuffed. When the officers lifted [Appellant] to his feet they saw packaged narcotics in the bag. A pat-down uncovered a second bag that contained additional narcotics and packaging materials. Additional packaged narcotics were discovered following a pat-down.

Three plastic vials containing marijuana, fifteen one-inch plastic bags containing cocaine, a sandwich bag containing cocaine, new and unused plastic bags and [$]438.00 in twenties, tens, fives and ones were seized.

Trial Court Opinion, 12/5/17, at 2-3 (citations to the record omitted, footnote added).

Appellant filed a motion to suppress the drugs and paraphernalia seized by police after his flight, fall, and arrest. Following a hearing, the trial court denied the suppression motion. Appellant proceeded to a non-jury trial, at the conclusion of which he was convicted of two counts each of possession of a controlled substance and possession with intent to deliver, and one count of

possession of drug paraphernalia. The trial court sentenced him to two to four years incarceration, followed by one year of probation. Appellant filed a timely notice of appeal, and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises the following issue for our review: "Whether the trial court erred in ruling to deny Appellant's [m]otion to [s]uppress [e]vidence, in that the evidence [was] insufficient to justify an investigatory stop resulting in the seizure of all items retrieved having been unlawful." Appellant's brief at 5.

On appeal from the denial of a suppression motion,

> Our standard of review . . . is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa.Super. 2011) (*en banc*) (citation omitted). Additionally, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." *Commonwealth v. Bush*, 166 A.3d 1278, 1281-82 (Pa.Super. 2017) (citation omitted).

To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to

- 3 -

demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. **See Commonwealth v. Reppert**, 814 A.2d 1196, 1201 (Pa.Super. 2002) (*en banc*). For this purpose, Pennsylvania courts have defined three types of police interaction: a mere encounter, an investigative detention, and a custodial detention. A mere encounter is characterized by limited police presence, and police conduct and questions that are not suggestive of coercion. Such encounters do not obligate the citizen to stop or respond and, consequently, need not be supported by any level of suspicion. **See id.** Thus, the hallmark of a mere encounter is that the subject is free to decline to interact with the police or to answer questions, and is also free to leave at any time. **See Commonwealth v. DeHart**, 745 A.2d 633, 636 (Pa.Super. 2000).

If, however, a police presence becomes too intrusive, the interaction must be deemed an investigative detention or seizure. An investigative detention, by implication, carries an official compulsion to stop and respond. **Id**. Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. **Id**.

To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise

terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person would have thought he was being restrained had he been in the defendant's shoes. **Reppert**, **supra** at 1201-02. Examples of circumstances that might indicate a seizure include the threatening presence of several officers or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. **See Commonwealth v. McClease**, 750 A.2d 320, 324-25 (Pa.Super. 2000).

Initially, we conclude that the trial court's factual findings, as stated in its Pa.R.A.P. 1925(a) opinion, are not supported by the suppression record, and we are therefore not bound by them. In its factual findings, as set forth in its Pa.R.A.P. 1925(a) opinion, the trial court omitted a critical factor; namely, that Officer Johnston testified that as he approached the two men, he gave them a verbal command to "stop."[2] **See** N.T. Suppression, 8/24/17, at 17, 28. After that command was given, Appellant fled. **Id**. at 28. Notably, the trial court made factual findings at the conclusion of the suppression hearing, and specifically found that, upon approaching Appellant and his companion, Officer Johnston had ordered them to "stop." **Id**. at 40.

---

[2] This factor is also absent from the Commonwealth's recitation of facts in its brief.

- 5 -

Officer Johnston's statement to Appellant was neither a question nor a suggestion. Rather, he directed Appellant to stop. ***See id***. at 17, 28. Our Supreme Court has held that "where a citizen approached by a police officer is ordered to stop . . . obviously a 'stop' occurs." ***Commonwealth v. Jones***, 378 A.2d 835, 839 (Pa. 1977) (holding that the appellant was subjected to an investigative detention at the time the police officers commanded him to stop). Moreover, Officer Johnston's show of authority was bolstered by the presence of Officer Lomax. ***See*** N.T. Suppression, 8/24/17, at 16. Under these circumstances, no reasonable person would have felt free to disregard Officer Johnston's order. Rather, a reasonable person in Appellant's situation would no doubt believe that any attempt to leave the scene after Officer Johnston's order to stop would have invoked compulsion by the officers. ***See McClease***, ***supra*** at 325. Accordingly, we conclude that, upon Officer Johnston's utterance of the order to "stop," Appellant was seized and an investigative detention commenced. ***See id***.

Having concluded that a seizure occurred, we must next determine whether Officer Johnston had reasonable suspicion to detain Appellant at the time he ordered him to stop. Appellant's sole contention on appeal is that reasonable suspicion was not established because the description provided by the owner of the market was vague and lacking in detail, and the officers observed no criminal activity. Appellant's brief at 11-12. We disagree.

An officer may stop and briefly detain a person for investigatory purposes when that officer has "reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." *Commonwealth v. Allen*, 725 A.2d 737, 740 (Pa. 1999). "[T]he fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." *Commonwealth v. Gray*, 784 A.2d 137, 142 (Pa.Super. 2001) (citation omitted). We must consider the totality of the circumstances, including such factors as "tips, the reliability of the informants, time, location, and suspicious activity." *Id*. (citing *Commonwealth v. Freeman*, 757 A.2d 903, 908 (Pa. 2000)). As noted above, however, the relevant "totality" of circumstances does not include events that occurred after the seizure was effectuated. For this reason, we may not consider Appellant's flight from the officers, as it occurred **after** the seizure. *See Commonwealth v. Mackey*, 177 A.3d 221, 229-30 (Pa.Super. 2017). Thus, the trial court erred in factoring Appellant's flight into its reasonable suspicion analysis. *See* Trial Court Opinion, 12/5/17, at 4-5.

To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including tips from citizens. *See Commonwealth v. Swartz,* 787 A.2d 1021, 1024 (Pa.Super. 2001) (*en banc*) (citation omitted). "Indeed, identified citizens who report their observations of criminal activity to police

are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk."[3] *Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa.Super. 2005).

Guided by these precepts, we must determine whether there were articulable and reasonable grounds to initiate an investigatory detention. The information implicating Appellant was provided by the owner of the Princess Market, who complained that two unwanted subjects were causing a disturbance within the store. N.T. Suppression, 8/24/17, at 13, 14. The owner provided the location and a physical description of the subjects, indicating that one was a twenty-five-year-old black male wearing a black jacket and black pants, and the other was a black male wearing black pants and a gray hoodie. *Id*. at 16. The officers arrived within two to four minutes of the call. *Id*. at 13. The police were familiar with the market, as they had responded to previous calls to that location for drug use, drug sales, fights, and domestic problems. *Id*. at 14. As they approached the market, the officers observed two black males exiting the market who matched the description provided by the owner. *Id*. at 17, 28. No other individuals were

---

[3] For this reason, when the underlying source of information provided to police is received from an anonymous caller, the police will need an independent basis to establish the requisite suspicion. *See Mackey*, *supra* at 231. If the tip contains sufficient information, the police can do this by corroborating sufficient details of the tip. *Id*. Otherwise, the police must investigate further by means not constituting a search and seizure. *Id*.

present who matched that description. *Id*. at 26. Thus, the owner's description of the subjects as well as their location matched the officers' observations.

Most importantly to this analysis, the caller identified himself to the police as the owner of the market, indicating that his report was from ongoing observation. *See Commonwealth v. Lohr*, 715 A.2d 459, 462 (Pa.Super. 1998). Unlike an anonymous informant, this caller was located, identified, and exposed to police scrutiny and risk of prosecution had the information been contrived. We can hardly presume citizens would do so unless their information was well-founded. *See Lohr*, supra at 462. This warrants the logical conclusion the information was unlikely to be contrived, and was consequently ingrained with a high degree of reliability, which did not necessitate an inordinate amount of corroboration to be credible. *Id*. Under these circumstances, and upon the officers' observation of the two subjects matching the physical description provided and at the described location, we find the totality of circumstances justified the minor intrusion of a temporary stop.

Having determined that the initial detention was justified, we conclude that Appellant's sole issue on appeal warrants no relief.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/6/18